United States District Court
Southern District of Texas
**ENTERED**
May 18, 2026
Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| MARK EUGENE RICKS, TDCJ #01238188, | § § § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:19-cv-587 |
| v. | § § | |
| DR. JESSICA KHAN, *et al.*, | § § | |
| Defendants. | § § | |

**MEMORANDUM AND OPINION**

**Introduction**

This dispute arises out of medical treatment decisions and treatment policies for chronic hepatitis C while Plaintiff Mark Eugene Ricks ("Mr. Ricks") was incarcerated in the Texas Department of Criminal Justice ("TDCJ"). Mr. Ricks, proceeding under 42 U.S.C. § 1983, alleges that medical providers, health administrators, and grievance officials violated the Eighth Amendment by delaying or denying curative direct-acting antiviral ("DAA") treatment for years as his hepatitis C progressed to cirrhosis. (Docket Entry No. 62). The defendants moved to dismiss some of the claims as to some of the defendants under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing lack of standing, failure to state a claim, and qualified immunity. (Docket Entry No. 65). Mr. Ricks responded. (Docket Entry No. 67).

Based on the pleadings, the motion, the record, and the applicable law, the court grants the motion to dismiss in part and denies it in part. The court dismisses with prejudice all claims against Sarfaraz Sadruddin and Brian Jacob Trieu for lack of standing under Rule 12(b)(1). The court also dismisses with prejudice the Fourteenth Amendment disparate treatment claims against all

defendants under Rule 12(b)(6). The motion to dismiss is denied as to the deliberate indifference and unconstitutional policy claims against Jamie Williams, Karen Faust, Sarah Poindexter, and Dale Dorman. Finally, the defendants' motion to dismiss based on qualified immunity is also denied without prejudice. The reasons for these rulings are set out below.

## I.    Background

Mr. Ricks is an inmate formerly confined within TDCJ, including at the Huntsville Unit in Huntsville, Texas. (Docket Entry No. 62 ¶ 1). He filed this civil rights action under 42 U.S.C. § 1983, alleging that medical providers, health administrators, and grievance officials violated his constitutional rights by denying him curative treatment for hepatitis C ("HCV") for several years while his condition progressed to cirrhosis. (*Id.* ¶¶ 96–126).

Mr. Ricks names as defendants Dr. Jessica Khan ("Khan"), Jamie Williams ("Williams"), Monica Pickthall ("Pickthall"), Karen Faust ("Faust"), Sarfaraz Sadruddin ("Sadruddin"), and Brian Jacob Trieu ("Trieu"), all employed by the University of Texas Medical Branch Correctional Managed Care ("UTMB CMC"), which provides medical care to TDCJ inmates. They all cared for Mr. Ricks in some capacity. (*Id.* ¶¶ 2–9). Khan worked as an infectious disease specialist; (*Id.* ¶ 2). Pickthall and Faust worked as physician assistants, (*Id.* ¶¶ 4, 6); Williams worked as a practice manager and senior practice manager, (*Id.* ¶ 3); Sadruddin and Trieu worked as radiology specialists providing diagnostic imaging services. (*Id.* ¶¶ 7–8). According to Mr. Ricks, Khan, Williams, Pickthall, Faust, Sadruddin, and Trieu had personal access to Mr. Ricks's medical records and were responsible for reviewing, updating, and monitoring those records during his incarceration. (*Id.* ¶ 9). He alleges that his medical appointments rotated among these providers, and that they reviewed laboratory tests, imaging studies, and other diagnostic information documenting the progression of his liver disease. (*Id.* ¶¶ 9, 45–57).

Mr. Ricks names Lanette Linthicum ("Linthicum"), Owen J. Murray ("Murray"), Denise DeShields ("DeShields"), and Gloria Moore ("Moore") as defendants involved in developing, approving, or implementing policies governing HCV treatment in TDCJ. (*Id.* ¶¶ 10–13). Linthicum served as Director of the TDCJ Health Services Division and reviewed, approved, and signed the Correctional Managed Health Care Infection Control Policy Manual, including Policy B-14.13.3 governing HCV treatment. (*Id.* ¶ 10). Murray served as Vice President of UTMB CMC and also reviewed, approved, and signed the manual containing Policy B-14.13.3. (*Id.* ¶ 11). DeShields served as Executive Medical Director of Texas Tech University Health Sciences Center Correctional Managed Care and reviewed, approved, and signed the same policy manual. (*Id.* ¶ 12). Moore served as the Correctional Managed Health Care Infection Control Policy Manual Coordinator and reviewed, approved, and circulated the policy manual, including Policy B-14.13.3. (*Id.* ¶ 13).

Mr. Ricks also names Sarah Poindexter and Dale Dorman as defendants involved in reviewing grievances related to his medical care. Poindexter worked as a Licensed Vocational Nurse III and grievance investigating official within the TDCJ Health Services Division. (*Id.* ¶ 14). Dorman worked as a Registered Nurse Manager III and grievance investigating official within the Health Services Division. (*Id.* ¶ 15).

Finally, Mr. Ricks names John Does #1 through #5 as defendants. (*Id.* ¶ 18). He alleges that these unidentified individuals were medical providers or policymakers employed by UTMB CMC, Texas Tech University Health Sciences Center Correctional Managed Care, TDCJ Health Services Division, or related entities, and that they either provided medical care to Ricks or participated in enforcing policies that delayed or denied him treatment. (*Id.*).

3

HCV is a chronic viral infection that attacks the liver and, if untreated, progresses through stages of fibrosis to cirrhosis, permanent liver scarring, and potentially death. (*Id.* ¶¶ 23–27). Mr. Ricks alleges that he contracted HCV while incarcerated and was diagnosed with chronic infection. (*Id.* ¶¶ 35–39). He was briefly treated between 2011 and 2012 with interferon-based medications, but that treatment was unsuccessful. (*Id.* ¶ 42). In 2011, the Federal Drug Administration ("FDA") approved direct-acting antivirals ("DAAs"), which became widely used and "the standard of care for HCV treatment," "cur[ing] HCV in more than 95% of cases." (*Id.* ¶¶ 31–34). Mr. Ricks alleges that he was not provided DAAs until late 2019, after his liver disease had progressed to cirrhosis, even though DAAs had become "widely available in 2013." (*Id.* ¶¶ 43–47, 62, 68).

Between 2012 and 2019, Mr. Ricks alleges that his condition was monitored through periodic laboratory testing, ultrasounds, scans, and clinical evaluations. (*Id.* ¶¶ 45–57). These diagnostic tests showed progressive liver damage over time, including worsening fibrosis and eventual cirrhosis. (*Id.* ¶¶ 26, 47, 51–57). During this time, Mr. Ricks experienced worsening symptoms associated with liver disease, including pain and other complications. (*Id.* ¶¶ 47, 69). Mr. Ricks asserts that despite his repeated requests for DAAs, the defendants denied or delayed providing him DAA medication while continuing to monitor his condition. (*Id.* ¶¶ 45–57, 62, 80). For example, Mr. Ricks claims that in October 2018, Pickthall told Mr. Ricks that his "ALT levels [were] . . . *too high* for treatment," and Pitckthall "hung up the phone" when Mr. Ricks asked for more information and treatment to reduce his levels. (*Id.* ¶ 80g). That same month, Mr. Ricks received a Grievance Response noting that he had not met the treatment criteria for DAA medications. (*Id.* ¶ 80h).

Mr. Ricks alleges that he ultimately received DAA treatment in late 2019, after his liver disease had progressed to cirrhosis, resulting in permanent liver damage and complications,

including swelling of the spleen, pancreas, and liver, jaundice, rectal bleeding, depression, and anxiety, among others. (*Id.* ¶¶ 62, 68–69).

According to Mr. Ricks, the named defendants' involvements in violating his constitutional rights were as follows:

- Khan, Williams, Pickthall, Faust, Sadruddin, and Trieu did not provide him with DAA treatment and only monitored his condition despite their knowledge of his worsening liver condition and access to diagnostic information showing disease progression. (*Id.* ¶¶ 45–47, 67).

- Linthicum, Murray, DeShields, and Moore promulgated, signed, or approved Policy B-14.13.3, which governed eligibility for DAA treatment and was used to deny or delay treatment for inmates with HCV, including Ricks. (*Id.* ¶¶ 45–47, 80).

- Poindexter and Dorman reviewed and signed grievance responses dated March 14, 2017, concluding that no action was warranted despite Ricks's requests for HCV treatment and the evidence of cirrhosis. (*Id.* ¶¶ 14–15). Furthermore, they reviewed his medical file during the grievance process and upheld decisions denying DAA treatment. (*Id.* ¶¶ 16–17).

In his First Amended Complaint ("FAC"), Mr. Ricks asserts Eighth Amendment claims for deliberate indifference and unconstitutional policies against Khan, Williams, Pickthall, Faust, Sadruddin, Trieu, Linthicum, Murray, DeShields, Moore, Poindexter, Dorman, and John Does #1 through #5. (*Id.* ¶¶ 96–118). He also asserts Fourteenth Amendment disparate treatment claims against all the defendants. (*Id.* ¶ 119–126).

Khan, Williams, and Pickthall previously moved to dismiss the claims against them, and the Fifth Circuit vacated the court's dismissal, remanding with instructions that Mr. Ricks be given

leave to amend. (*Id.* ¶ 5). After Mr. Ricks filed his FAC, the defendants again moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing lack of standing, failure to state a claim, and qualified immunity. (Docket Entry No. 65). Mr. Ricks filed a response opposing dismissal. (Docket Entry No. 67). The court now considers that motion to dismiss.

## II.     Claims at Issue

As a threshold matter, the court clarifies its framing of the issues, including which claims the defendants seek to dismiss. The FAC asserts the following claims against "each defendant": (1) violations of the Eighth Amendment by deliberate indifference; (2) violations of the Eighth Amendment by developing, implementing, or enforcing unconstitutional policies; and (3) violations of the Fourteenth Amendment based on disparate treatment. (Docket Entry No. 62 ¶¶ 96–126).

The defendants' motion to dismiss argues that, "[p]roperly construed," the complaint asserts four sets of claims: (1) treatment-related Eighth Amendment claims against Khan, Williams, Pickhall, Faust, Saddrudin, and Trieu; (2) policy-related Eighth Amendment claims against Linthicum, Murray, DeShields, and Moore; (3) grievance-related Eighth and Fourteenth Amendment claims against Linthicum, Murray, DeShields, Moore, Poindexter and Dorman; and (4) Fourteenth Amendment equal protection claims against all defendants.[1] (Docket Entry No. 65 at 2).

It is unclear why the motion to dismiss identifies an additional set of grievance-related claims when no such claims are identified in the FAC. In response to the motion to dismiss, Plaintiff's counsel expresses a similar concern, clarifying that "Mr. Ricks does not assert a stand-

---

[1] In his response, Mr. Ricks states that he "no longer advances any equal protection claim." (Docket Entry No. 67 at 2 n.1). The court dismisses that claim below. *See infra*, Section IV.B.iii.

alone cause of action for the adequacy of the specific procedure accorded his grievances." (Docket Entry No. 67 at 6 n.1). Instead, the response argues, "[t]he Complaint's allegations regarding Mr. Ricks'[s] grievances and Defendants' responses to them are part of Mr. Ricks'[s] broader claim that Defendants were aware of his grave medical condition, ignored it, and were deliberately indifferent to it in violation of the Eighth Amendment." (*Id.*).

The defendants state that they do not seek dismissal of Mr. Ricks's "treatment-related Eighth Amendment claims against Khan and Pickthall" or the "policy-related claims against Linthicum, Murray, DeShields, and Moore." (Docket Entry No. 65 at 3 n.1). However, the defendants fail to clarify whether the "treatment-related" claims include both the Eighth Amendment deliberate indifference claims *and* the Eighth Amendment unconstitutional policy claims asserted against Khan and Pickthall. Similarly, the defendants do not clarify whether the "policy-related" claims apply to both Eighth Amendment claims asserted against Linthicum, Murray, DeShields, and Moore. In light of this ambiguity, the court will narrowly construe the defendants' motion, addressing only the claims that are (1) explicitly brought in Mr. Ricks's complaint and (2) directly challenged in the defendants' motion to dismiss.

This opinion addresses the following claims against the following defendants:

| Claim | Defendants |
|---|---|
| *Eighth Amendment Deliberate Indifference* | Williams, Faust, Sadruddin, Trieu, Poindexter, and Dorman |
| *Eighth Amendment Unconstitutional Policy* | Williams, Faust, Sadruddin, Trieu, Poindexter, and Dorman |
| *Fourteenth Amendment Disparate Treatment* | Khan, Williams, Pickthall, Linthicum, Faust, Sadruddin, Trieu, Murray, DeShields, Moore, Poindexter, Dorman, and John Does #1–#5 |

The Eighth Amendment deliberate indifference and Eighth Amendment unconstitutional policy claims against Khan, Pickthall, Linthicum, Murray, DeShields, Moore, and John Does #1–#5 will remain, along with the claims the court does not dismiss.

### III.     The Legal Standard

#### I.      42 U.S.C. § 1983

Mr. Ricks brings his claims against all the defendants under 42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and constitutional rights." *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (per curiam); *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a valid claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Gomez v Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam). When the facts alleged by the plaintiff, taken as true, do not show a violation of a constitutional right, the complaint is properly dismissed for failure to state a claim. *See, e.g., Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009) (per curiam); *Rios v. City of Del Rio*, Tex., 444 F.3d 417, 421 (5th Cir. 2006).

#### II.     Motions to Dismiss Under 12(b)(1) and 12(b)(6)

Federal Rule of Civil Procedure 12(b)(1) applies to challenges to the court's subject-matter jurisdiction based on standing. "Federal courts have jurisdiction only over 'cases' or 'controversies.'" *Williams v. Parker*, 843 F.3d 617, 620 (5th Cir. 2016). If a party lacks standing, "[t]here is no case or controversy." *Id.* Because standing is necessary for subject-matter jurisdiction, it "is a threshold issue that [the court] consider[s] before examining the merits." *Id.*

Courts may dismiss for lack of subject-matter jurisdiction based on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Clark v. Tarrant County*, 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th

Cir. 1981)). A court decides motions to dismiss under Rule 12(b)(1) by "tak[ing] the well-pled factual allegations of the complaint as true and view[ing] them in the light most favorable to the plaintiff." *Stratta v. Roe*, 961 F.3d 340, 349 (5th Cir. 2020) (quotation omitted).

"At earlier stages of litigation . . . the manner and degree of evidence required to show standing is less than at later stages." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 329 (5th Cir. 2020). As "the party invoking federal jurisdiction," the plaintiffs bear the burden of establishing standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). They must meet this burden "'with the manner and degree of evidence required at the successive stages of the litigation,'" which means that "on a motion to dismiss, plaintiffs must allege facts that give rise to a plausible claim of . . . standing." *Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 133–34 (5th Cir. 2009) (quoting *Lujan*, 504 U.S. at 561). When a complaint seeks multiple kinds of relief, the plaintiff must show standing "for each type of relief sought." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).

A motion to dismiss under Rule 12(b)(6) is properly granted when the plaintiff's complaint fails to state a claim upon which relief can be granted. When the court considers a motion under Rule 12(b)(6), "the factual information to which the court addresses its inquiry is limited to the (1) [] facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). The court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305 (5th Cir. 2020) (cleaned up). The court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true," and considers whether

"with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (cleaned up).

To survive a motion to dismiss under Rule 12(b)(6), the complaint must include specific facts, not conclusory allegations. *See Powers*, 951 F.3d at 305. The complaint must also allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Gomez*, 18 F.4th at 775. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). If the facts alleged are facially sufficient, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). But if the complaint does not set forth "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. *Id.* at 570.

## III. Analysis

The court finds that Mr. Ricks has standing to sue Williams, Faust, Poindexter, and Dorman but lacks standing for the claims against Sadruddin and Trieu. The court additionally finds that Mr. Ricks has alleged sufficient facts to state claims for deliberate indifference and unconstitutional policy against Williams, Faust, Poindexter, and Dorman. The court dismisses Mr. Ricks's Fourteenth Amendment claims against all defendants. Finally, the court finds that qualified immunity does not bar Mr. Ricks' remaining claims at this stage of the proceedings.

### A. Rule 12(b)(1)

The court will first address the defendants' argument that Mr. Ricks does not have standing to sue Williams, Faust, Sadruddin, Trieu, Poindexter, or Dorman. To establish standing at the

motion to dismiss stage, a plaintiff must allege facts that plausibly show the following: "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury." *Croft v. Governor of Tex.*, 562 F.3d 735, 745 (5th Cir. 2009) (citing *Lujan*, 504 U.S. at 560); *see also Cornerstone*, 563 F.3d at 133–34. The second element—causation—requires that "the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party." *Lujan*, 504 U.S. at 560 (internal quotation omitted). Here, the defendants concede that Mr. Ricks "has alleged an actual, concrete, and particularized injury in fact; namely, permanent liver damage and related physical and psychological symptoms." (Docket Entry No. 65 at 4). However, the defendants argue that Mr. Ricks lacks standing to bring claims against Williams, Faust, Sadruddin, Trieu, Poindexter, and Dorman because "this injury is not fairly traceable to [their] actions." (*Id.*).

      i.    *Williams*

The defendants argue that, as practice manager, Williams occupied an exclusively administrative role with no involvement in treatment decisions. (*Id.* at 5). "Because UTMB practice managers have no involvement in treatment decisions," the defendants argue, "there can be no causal connection between Williams'[s] actions and Plaintiff's injury so as to confer standing." (*Id.*). Mr. Ricks, on the other hand, argues that he does not rely on Williams's "supervisory authority" to state a claim against her; instead, the FAC "alleges that Defendant Williams affirmatively participated in his injuries." (Docket Entry No. 67 at 10). The court agrees with Mr. Ricks.

At this stage, Mr. Ricks has alleged facts sufficient to establish standing for the claims against Williams. The complaint alleges that Williams "personally had access to and [was]

responsible for monitoring and updating Mr. Ricks'[s] medical files." (Docket Entry No. 62 ¶ 9). The complaint also alleges that Williams's signature appears throughout Mr. Ricks's record, even as Mr. Ricks's Aspartate Aminotransferase levels rose "from a low of 32 in 2004 to 160 in 2018." (*Id.* ¶ 59). Additionally, the complaint alleges that Williams personally dismissed the concerns Mr. Ricks asserted in his grievance, stating "[l]abs were ordered to continue to monitor your levels." (*Id.* ¶ 80i). Viewing these factual allegations in the light most favorable to the plaintiff, the court finds that Williams's alleged conduct is fairly traceable to Mr. Ricks's injury. Accordingly, the motion to dismiss Mr. Ricks's claims against Williams for lack of standing is DENIED.

    ii.    *Faust, Sadruddin, and Trieu*

The defendants argue that Faust (a UTMB physician's assistant) and Sadruddin and Trieu (UTMB radiology specialists) merely ordered, interpreted, or signed off on Mr. Ricks's ultrasounds. (Docket Entry No. 65 at 5). According to the defendants, Mr. Ricks does not claim "that these ultrasounds themselves led to his denial of treatment. All he alleges is that the ultrasounds revealed liver abnormalities which should have warranted others to prescribe DAA drugs." (*Id.*). Mr. Ricks argues that Faust, Sadruddin, and Trieu "misread the Complaint in limiting their involvement to interpreting the repeated ultrasounds that revealed Mr. Ricks's serious liver degradation for years before he was given treatment." (Docket Entry No. 67 at 11–12). Mr. Ricks is correct regarding Faust, but incorrect when it comes to Sadruddin and Trieu.

The complaint attributes specific acts to Faust, which are fairly traceable to Mr. Ricks's injury. Mr. Ricks alleges that in 2017, ultrasound results signed by Faust showed a coarsened liver with bumps and nodules indicating advancing cirrhosis. (Docket Entry No. 62 ¶ 56). Mr. Ricks further alleges that in May 2018, Faust ordered an ultrasound that showed a possible mass on his liver and that Faust was "watching" his hepatitis C treatment and interacting with him about it.

12

(*Id.* ¶ 57, 80(i)). The complaint also alleges that Faust admitted that Mr. Ricks should be at the "top of the list" and could not explain why he had not been given the curative DAA treatment. (*Id.* ¶ 67). These allegations are sufficient to show that Faust's conduct was plausibly traceable to Mr. Ricks's injury.

On the other hand, Mr. Ricks does not allege sufficient facts to connect his injury to Saddrudin and Trieu. The complaint alleges that Sadruddin and Trieu were employed by UTMB Correctional Managed Care and worked as radiology specialists providing medical services to inmates, including Mr. Ricks. (*Id.* ¶¶ 6–7). Mr. Ricks alleges that on December 15, 2016, Sadruddin personally interpreted an ultrasound that showed Stage 3 "cirrhotic liver morphology." (*Id.* ¶ 51). Mr. Ricks also alleges that Trieu signed off on that ultrasound. (*Id.* ¶¶ 8, 52). These allegations indicate that Sadruddin and Trieu interpreted imaging that reflected Mr. Ricks's cirrhosis. But the complaint does not allege facts showing that Sadruddin or Trieu were monitoring Mr. Ricks's condition, had authority over Mr. Ricks's treatment plan, controlled access to DAA medication, denied any requests for treatment, delayed a referral, ignored a complaint, or otherwise interfered with prescribed care. Viewing all factual allegations in the light most favorable to Mr. Ricks, the court finds that Faust's alleged conduct is fairly traceable to Mr. Ricks's injury, but Saddrudin and Trieu's conduct is not.

Accordingly, the 12(b)(1) motion to dismiss Mr. Ricks's claims is DENIED as to Faust and GRANTED as to Saddrudin and Trieu. All claims against Saddrudin and Trieu are DISMISSED for lack of standing under Rule 12(b)(1).

  *iii. Poindexter and Dorman*

The defendants argue that Mr. Ricks's "sole allegation against Poindexter and Dorman is that they reviewed, approved, and personally signed the responses to his grievances complaining

about access to DAA drugs." (Docket Entry No. 65 at 5). The defendants argue that Mr. Ricks lacks standing against Poindexter and Dorman because their responses to Mr. Ricks's grievances did not affect his access to DAA drugs, as "the only role of TDCJ grievance investigators is to 'review the medical record and explain application of UTMB[]'s policies to inmates.'" (*Id.* at 6 (quoting *Cooper v. Johnson*, 353 F. App'x 965, 968 (5th Cir. 2009)). In response, Mr. Ricks argues that the defendants' fact-based argument as to the ability of TDCJ grievance investigators is inappropriate for resolution at the motion to dismiss stage. (Docket No. 67 at 14). Mr. Ricks maintains that he "stated sufficient details of Poindexter and Dorman's personal involvement in causing his injuries, as well as their deliberate indifference." (*Id.* at 16). The court again agrees with Mr. Ricks.

The complaint alleges facts sufficient to show that Mr. Ricks's injury is fairly traceable to the actions of Dorman and Poindexter. Mr. Ricks alleges that Dorman and Poindexter worked as registered nurses and grievance investigating officials at TDCJ. (Docket Entry No. 62 ¶¶ 14–15). The complaint states that Mr. Ricks filed "multiple official grievances" detailing his cirrhosis and lack of treatment. (*Id.* ¶ 74). The complaint also includes a March 3, 2017, grievance response signed by Poindexter and Dorman stating that "no action is warranted." (*Id.* ¶ 80e). The complaint further alleges that Poindexter and Dorman had "a duty to review Mr. Ricks'[s] medical file at least during review of his multiple grievances" and that they oversaw the grievance program office, which "denied Mr. Ricks'[s] grievances that sought appeal of the Treater Defendants' decisions to deny him DAAs or any other medications." (*Id.* ¶ 16–17). At this stage, the court finds that those allegations are sufficient to plausibly plead that Poindexter and Dorman's conduct was fairly traceable to Mr. Ricks's injury. Accordingly, the motion to dismiss Mr. Ricks's claims against Poindexter and Dorman for lack of standing is DENIED.

14

**B. Rule 12(b)(6)**

    *i.    The Eighth Amendment Claims for Deliberate Indifference*

The defendants argue that Mr. Ricks's complaint fails to allege that Williams, Faust, Poindexter, or Dorman "were personally involved in determining his access to DAA drugs." (Docket Entry No. 65 at 9). Therefore, the defendants argue, "they could not have acted with deliberate indifference with respect to that access." (*Id.*). In response, Mr. Ricks maintains that he adequately stated a deliberate indifference claim against these defendants because "the complaint clearly alleges that" each of them "personally and affirmatively participated in the denial of treatment." (Docket Entry No. 67 at 8).

The Eighth Amendment protects prisoners from cruel and unusual punishment arising from prison officials' and medical providers' deliberate indifference toward a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). Generally, to prove deliberate indifference, a plaintiff must demonstrate that the official is aware "that [an] inmat[e] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). In the context of claims against medical providers, the deliberate indifference standard is "extremely high." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). "Actions and decisions by officials that are merely inept, erroneous, ineffective or negligent do not amount to deliberate indifference." *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998). Neither do "[u]nsuccessful medical treatment[s], acts of negligence, … medical malpractice," or "a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Instead, to show that a prison medical provider violated the Constitution, the prisoner must show that the provider "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or

engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* (internal quotation marks and citations omitted).

Although the bar for deliberate indifference is extremely high, the Fifth Circuit has held that refusing or delaying necessary treatment for a known serious condition, or persisting in ineffective monitoring while a condition worsens, may constitute deliberate indifference. *See, e.g., Easter v. Powell*, 467 F.3d 459, 463–65 (5th Cir. 2006) (prison nurse's conduct met the deliberate indifference threshold when she "refused to provide any treatment to, and ignored the complaints of, a patient suffering from severe chest pain that she knew had a history of cardiac problems"). The court will address Mr. Ricks's deliberate indifference claims against Williams, Faust, Poindexter, and Dorman in turn.

a.   Williams

The FAC plausibly alleges that Williams was personally aware of Mr. Ricks's serious medical condition and nonetheless failed to take reasonable measures to ensure treatment. As explained above, the FAC alleges that Williams was employed as a Practice Manager providing medical services to inmates, including Mr. Ricks. (Docket Entry No. 62 ¶ 3). Mr. Ricks alleges that Williams had access to and responsibility for monitoring his medical records and participated in decisions affecting his hepatitis C treatment. (*Id.* ¶ 9). Despite knowledge that Mr. Ricks's records reflected advanced cirrhosis, permanent liver damage, and worsening liver function, Williams allegedly denied or delayed curative treatment and instead recommended continued monitoring. (*Id.* ¶¶ 59; 80i). Mr. Ricks alleges that Williams, along with other treating providers, repeatedly denied requests for direct-acting antiviral medications, citing cost, waitlists, and internal policy. (*Id.* ¶ 45). The FAC also alleges that Williams knew that DAA medications were highly effective and widely recognized as the standard of care yet failed to provide them even after

Mr. Ricks's cirrhosis diagnosis and despite his worsening condition. (*Id.* ¶¶ 73, 75, 80c, 80i, 81–82).

At the pleading stage, these allegations support a reasonable inference that Williams knew Mr. Ricks faced a substantial risk of serious harm and nevertheless chose to continue ineffective monitoring rather than providing available treatment. *See Easter v. Powell*, 467 F.3d at 464–65; *Farmer v. Brennan*, 511 U.S. at 842. Unlike claims based solely on supervisory status, Mr. Ricks alleges Williams personally reviewed his grievances, accessed his medical records, and participated in decisions affecting his treatment. The motion to dismiss Mr. Ricks's deliberate indifference claim against Williams is DENIED.

b. Faust

The FAC also plausibly alleges that Faust had personal knowledge of Mr. Ricks's serious medical condition yet failed to take reasonable measures to ensure treatment. Mr. Ricks alleges that Faust personally participated in his hepatitis C care over multiple years, ordered and signed off on imaging reflecting cirrhosis progression, made statements indicating Mr. Ricks should have been prioritized for curative medication, and nonetheless continued with a course of monitoring rather than treatment. (Docket Entry No. 62 ¶¶ 56–57, 67, 80i).

At the pleading stage, these allegations support a reasonable inference that Faust knew that Mr. Ricks faced a substantial risk of serious harm from untreated hepatitis C and cirrhosis yet persisted in a course of monitoring instead of ensuring treatment. Mr. Ricks does not merely allege that Faust made an isolated diagnostic observation. Rather, he alleges that she participated in the management of his hepatitis C care over time, ordered imaging, reviewed results indicating worsening cirrhosis, acknowledged that he ought to be receiving different treatment, and nonetheless failed to secure treatment. (*Id.*). Accepting those allegations as true, Mr. Ricks

17

plausibly alleges deliberate indifference against Faust under *Farmer*. *See* 511 U.S. at 828. The motion to dismiss Mr. Ricks's deliberate indifference claims against Faust is DENIED.

### c. Poindexter and Dorman

Finally, the FAC plausibly alleges that Poindexter and Dorman had personal knowledge of Mr. Ricks's serious medical condition and failed to take reasonable measures to ensure treatment. The defendants argue that "the denial of grievances cannot form the basis for any Section 1983 claim." (Docket Entry No. 65 at 9). The defendants are correct that Mr. Ricks "does not have a constitutional right to have his grievances resolved in his favor or to have his claims reviewed pursuant to a grievance process that is responsive to his perceived injustices." *Burgess v. Reddix*, 609 F. App'x 211, 212 (5th Cir. 2015) (per curiam). However, the FAC does not simply allege that Poindexter and Dorman violated the Eighth Amendment by denying Mr. Ricks's grievance requests. Mr. Ricks specifically alleges that Poindexter and Dorman were personally aware of Mr. Ricks's health condition, had a duty to monitor the quality of care he was given, and denied him DAA treatment or other medications, citing policy B-14.13.3. (Docket Entry No. 62 ¶¶ 16–17). The FAC also alleges that Poindexter and Dorman personally reviewed a grievance explaining that Mr. Ricks had developed cirrhosis, yet they both signed a 2017 grievance response stating "no action is warranted." (*Id.* ¶ 80e).

Viewing these allegations in the light most favorable to Mr. Ricks, the FAC plausibly alleges that Poindexter and Dorman knew Mr. Ricks faced substantial risk of serious harm from untreated cirrhosis yet failed to take reasonable measures to mitigate that risk. Accordingly, the motion to dismiss the deliberate indifference claims against Poindexter and Dorman is DENIED.

### ii. *The Eighth Amendment Claims for Unconstitutional Policy*

The defendants argue that Mr. Ricks "fails to state an Eighth Amendment claim" against Williams, Faust, Poindexter, or Dorman. (Docket Entry No. 65 at 8). Because the complaint alleges two separate Eighth Amendment claims against Williams, Faust, Poindexter, and Dorman, the court reads the defendants' motion as a request to dismiss both the deliberate indifference and the unconstitutional policy claims against these defendants. However, beyond the assertion that Mr. Ricks fails to show that Williams, Faust, Poindexter, or Dorman "were personally involved in determining his access to DAA drugs," the defendants present no substantive arguments demonstrating why the court should dismiss the unconstitutional policy claims against these defendants. *See generally* (Dkt. Entry No. 65). The motion to dismiss the Eighth Amendment unconstitutional policy claims against Williams, Faust, Poindexter, and Dorman is DENIED.

### iii.    *The Fourteenth Amendment Disparate Treatment Claims*

The defendants moved to dismiss Mr. Ricks's claim that they violated his Fourteenth Amendment rights by denying or delaying hepatitis C treatment while providing treatment to other similarly situated inmates. (Docket Entry No. 65 at 10–12). In response, Mr. Ricks states that he "no longer advances any equal protection claim." (Docket Entry No. 67 at 2 n.1). Because Mr. Ricks has withdrawn his equal protection claim against all defendants, the defendants' motion to dismiss the Fourteenth Amendment claim is GRANTED, and that claim is DISMISSED WITH PREJUDICE as to all defendants.

### iv.    *Qualified Immunity*

The defendants contend that even if Mr. Ricks states a claim for relief, the defendants are entitled to dismissal based on qualified immunity because Mr. Ricks has failed to show that their actions were objectively unreasonable. (Docket Entry No. 65 at 12–14). "Qualified immunity protects officers from suit unless their conduct violates a clearly established right." *Austin v. City*

19

*of Pasadena, Tex.*, 74 F.4th 312, 322 (5th Cir. 2023) (quoting *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003)); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Determining whether qualified immunity protects an official in a particular situation involves two steps: "[F]irst we ask whether the official's alleged conduct has violated a federal right; … second we ask whether the right in question was 'clearly established' at the time of the alleged violation, such that the official was on notice of the unlawfulness of his or her conduct." *Solis v. Serrett*, 31 F.4th 975, 981 (5th Cir. 2022) (quoting *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc)).

When qualified immunity is raised as a basis for dismissal in a Rule 12(b)(6) motion, the court must determine whether "the plaintiff's pleadings assert facts which, if true, would overcome the defense." *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (quoting *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991, 994 (5th Cir. 1995)). Claims implicating qualified immunity "are subject to the same Rule 8 pleading standard set forth in *Twombly* and *Iqbal* as all other claims." *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020). To overcome the defense, the plaintiff must allege facts tending to show that the defendants violated the plaintiff's constitutional rights and that their actions were objectively unreasonable in light of clearly established law. *Alexander v. Eeds*, 392 F.3d 138, 144 (5th Cir. 2004).

At the time of the events alleged, the law was clearly established that prison officials and medical providers violate the Eighth Amendment when they are deliberately indifferent to a prisoner's serious medical needs. *Estelle*, 429 U.S. at 104–05. It was also clearly established that prison officials may not implement or enforce policies that expose prisoners to a substantial risk of serious harm. *See Farmer*, 511 U.S. at 847. Mr. Ricks has alleged facts that support the inference that Williams, Faust, Poindexter, and Dorman acted objectively unreasonably in light of this clearly established law. As outlined above, the FAC alleges sufficient facts to show Williams,

20

Faust, Poindexter, and Dorman each had personal knowledge of Mr. Ricks's cirrhosis and the availability of DAA to treat it, yet they refused Mr. Ricks that treatment. This is not merely a prisoner's disagreement over the medical treatment he received. This was prison officials' refusal to provide a treatment known to be much more effective in treating the inmate's known, and potentially fatal, disease. (Docket Entry No. 62 ¶¶ 9, 14–16). The complaint also alleges that each of these defendants ignored Mr. Ricks's concerns and did not take action to ensure Mr. Ricks received the treatment he needed (*Id.* ¶¶ 59, 67, 80).

Accepting those allegations as true, Mr. Ricks has pleaded facts that, if proven, could show deliberate indifference, enforcement of unconstitutional policies, and objectively unreasonable conduct under clearly established law. At this stage of the proceedings, these defendants have not established entitlement to qualified immunity. The motion to dismiss on this basis is denied without prejudice to reasserting the defense at a later stage of this litigation.

## IV.    Conclusion

Based on the above, all claims against Sadruddin and Trieu are dismissed with prejudice for lack of standing. The Fourteenth Amendment equal protection claims against all defendants are dismissed with prejudice under 12(b)(6).

The following claims remain:

| Claim | Defendants |
|---|---|
| *Eighth Amendment Deliberate Indifference* | Khan, Williams, Pickthall, Linthicum, Faust, Murray, DeShields, Moore, Poindexter, Dorman, and John Does #1–#5 |
| *Eighth Amendment Unconstitutional Policy* | Khan, Williams, Pickthall, Linthicum, Faust, Murray, DeShields, Moore, Poindexter, Dorman, and John Does #1–#5 |

The remaining defendants must answer Mr. Ricks's claims for deliberate indifference and unconstitutional policy no later than June 12. The stay on discovery is lifted (Docket Entry No. 69), and the parties are ordered to file, jointly if possible, a new proposed scheduling and docket

21

control order no later than July 10, 2026. A hearing is set by zoom on July 17, 2026, at 4:00 p.m.

CDT. The Zoom link is publicly available on the court's website.

SIGNED on May 15, 2026, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge